MILLS *vs.* BAEHR'S EXECUTORS.

A provision in a *lease* that the rent shall cease if the premises become untenantable by *fire or other casualty*, does not extend to the case of a building, in the city of New-York, becoming untenantable in consequence of the greater portion of it being taken down, to conform to an order of the corporation for the widening of the street on which it is situate.

ERROR from the New-York common pleas. This was an action of covenant, for the nonpayment of rent. The premises demised consisted of a lot situate at the corner of *Wall* and *Pearl* streets, in the city of New-York, being 20 feet 3 inches on *Pearl*, and 53 feet 5 inches on *Wall street*, for the term of *eight years*, from 1st May, 1830, subject to an annual rent of $3000, payable quarterly. The covenant for payment of the rent contained an *exception* in these words : " It being understood that if the premises shall become untenantable by *fire* or *other casualty*, that the rent shall cease while they so remain." In 1836 Wall street was widened by an order of the corporation of the city of New-York, and a large portion of the demised premises taken for that purpose, leaving the lot reduced to the following dimensions, viz. in front on *Pearl street*, 3 feet 8 inches ; in rear, 6 feet 11 inches ; in length on *Wall street*, 40 feet 3 inches, and on the opposite side 40 feet 6 inches. On 27th October, 1836, the corporation ordered the removal of so much of the building as covered the ground to be taken *into Wall street, and on the 1st [ *255 ] November, 1836, the *tenant* removed from the premises, but did not surrender them to the landlords. The commissioners of estimate and assessment awarded to the *tenant* for his *damages* occasioned by the widening of the street $3000, and to his *under tenants* $2800. The value of the reduced lot was estimated at from $15,000 to $30,000. With the use of the old materials, valued at $1000, a new building might have been erected in the course of 6 or 7 weeks at a cost of $2000, which would have

rented for $1000 *per annum;* or the building on the premises might have been made to conform to the new line of the street at an expense of from $800 to $900, and the building would then have rented for upwards of $1000 *per annum.* Without a building the lot in its reduced state was worth nothing to the tenant. The plaintiffs demanded 2250, being the three quarters rents accruing between the first day of *November*, 1836, and the first day of *August*, 1837. The cause was heard by *referees*, who reported the sum of $375 to be due to the plaintiffs, and their report was confirmed by the common pleas and judgment rendered for the plaintiffs. The defendant sued out a writ of error.

*T. Sedgwick*, for the plaintiff in error.

*W. Mitchell*, for the defendants in error.

*By the Court,* NELSON, Ch. J. It is apparent from the language of the *exception* in the covenant to pay the rent, that it does not reach a disturbance of the premises by the proceedings of the corporation of New-York, relating to the widening and opening of streets. The term " other casualty," refers to some fortuitous interruption of the use. This is clear, not only upon the import of the words, but from the connection in which they are found. No *casualty* has intervened. On the contrary, whatever has taken place, has been in pursuance of established law, and might have been, and probably was, anticipated. Neither does the interpretation [ *256 ] come within the spirit or intent of the *exception. In judgment of law, the widening of streets in the city works no injury to the lessee. Full compensation is made for all damages sustained. Nearly $6000 have been awarded in this case to him and his sub-tenants, for the disturbance. The principle upon which such compensation is to be made, will be found in *Gillespie* v. *Thomas*, 15 *Wendell*, 464; and it will be seen that in the distribution between the landlord and tenant, the latter is still to pay a rateable rent for the portion of the premises not taken for the improvement.

But it is insisted that according to the evidence, the remaining premises for the unexpired term were of *no value.* That was a question of fact for the referees, and their determination cannot be reviewed on error. It was conceded if *any* value was shewn, the amount could not be questioned; but whether any value or not, is equally a question of fact. The case shews, the building might have been cut down to conform with the new line of the street, and repaired so as to have rented during the unexpired term for a sum exceeding the expense.

Judgment affirmed.