The opinion of the court was delivered by
McEnery, J.
The plaintiffs leased from defendant, Henderson-, the property No. 100 Oanal street, for a term of five years from 1st October, 1890.
The property was partially destroyed by fire, and this suit was instituted by plaintiffs to annul the lease.
. There was judgment for plaintiffs and defendant appealed. The lessors admit the partial destruction of the property, and are Willing to remit that part of the price of the lease during the time the building was undergoing repairs. There is an energetic controversy in the ease as to the interpretation of Art, 2697, O. 0., whether the right of election to so demand, in case of partial destruction of the premises, the reduction of the rent, or the dissolution of the contract of lease, when made by the lessee, becomes absolute when exercised, leaving no discretion to the court, which is bound to give judgment in accordance with the election made by the lessee. Practically, the discussion amounts to little, for if the lessor resists the demand of the lessee for the dissolution of the lease, the question of “ partial destruction ” must necessarily go to the courts for solution. It becomes one of fact.
Article 2697, O. 0., says: “ If during the lease the thing be totally destroyed by an unforeseen event, or if it be taken for a purpose of public utility, the lease is at an end. If it be only destroyed in part, the lessee may either demand a diminution of the price or a revocation of the lease.”
*1549 Article 2699 says: “If without any fault of the lessor the thing ceases to be fit for the purposes for which it was leased, or if the use be much impaired, as if a neighbor, by raising his walls shall intercept the light of the house leased, the lessee may, according to circumstances, obtain the annulment of the lease, but has no claim for indemnity.”
From the above article it is clear that if is not every partial destruction which will dissolve the lease, but it depends upon the facts, of each case, “according to the circumstances,” whether the lease-shall be annulled. It may be that only portions of - the building may be destroyed which would not disturb the quiet possession of the-lessee, or greatly inconvenience him, such for instance as the partial-destruction of ornamental work, exterior cornices, galleries, sheds, etc. It would be quite different if there were such a partial destruction as to expose the inmates of the house and their property to the-elements, thus compelling them to abandon the house and deliver it-into the possession of the lessor for purposes of repair. In such a contingency'the thing leased ceases to be in that condition to serve the purposes for which it was leased, and the lessee’s peaceable possession of the thing leased is disturbed. C. C. 2692; Coleman vs. Height, 14 An. 570.
In case of Dussau vs. Husband, 6 An. 279, the court said that. “ the lawgiver did not contemplate the dissolution of leases, except in extreme cases, but rather an equitable indemnity to the tenant for a temporary inconvenience sustained unexpectedly and without the-fault of the lessor.” And this doctrine has been affirmed in 17 An. 322; 12 An. 828; 21 An. 23. But when the partial destruction has been of such a nature as to menace discomfort to the tenant during the entire term; to cause the tenant to abandon the premises in order that repairs may be made when the premises are no longer suitable for the purposes for which they were leased, in such cases it is clear that the lease should be annulled.
The partial destruction of the building leased by plaintiffs from defendants made it entirely unfit for the purposes for which it was leased. It was a wreck. It was not habitable; it was unfit for the storage of goods and merchandise. The necessary repairs to it required some months for their completion.
If these facts alone were presented the plaintiffs would be entitled to a decree annulling the lease.
*1550 But there is an insurmountable obstacle to granting the relief prayed for by plaintiffs. On 28th January, 1892, the plaintiffs brought suit against M, H. Rothschild & Co. for an alleged lease to them of the building 100 Oanal street. In this suit there was judgment for defendants and the plaintiffs appealed to this court. This suit is still pending. In their petition in the suit against Rothschild & Co. they aver “ your petitioners tendered to M. H. Rothschild & Co. the premises No. 100 Oanal street and placed-the use and occupancy of the same at their disposal, and that said premises are vacant and unoccupied, and that Rothschild & Co. refuse to pay under their contract the rent therefor.” This sublease was made 10th August, 1892, for the unexpired term of plaintiff’s lease from the Hender-sons. The partial destruction of the building occurred on 21st September, 1893.
Thus by their continuous judicial action the plaintiffs have placed it beyond their power to surrender the leased premises to the owners. The suit was a notice to them that they desired the continuance of the lease. The lessors could not take possession of this property in the face of the judicial declarations of plaintiffs. These facts — these judicial declarations of the plaintiffs bring this case directly within the ruling of Penn vs. Kearney, 21 An , p. 21. In that case the defendant retained a portion of the leased premises, a part of which had been destroyed by fire. In a suit against him for the rent he prayed in answer for an annulment of the lease on account of this partial destruction. The language of the court may be appropriately applied here. “If the defendant had surrendered to plaintiffs the whole premises our conclusion might have been different, though even in such a case it must be remembered that our laws do not favor the abrogation of leases where the lessor is not in fault.”
It is contended by plaintiffs that the effect of this suit against Rothschild & Co. is done away with by an agreement between them and Rothschild & Co. The agreement was that Rothschild & Co. assented to this suit, and they were to receive whatever benefits which might result from the suit instituted against these defendants. This agreement can nob affect the issues in this case. It can not prejudice the rights of defendants who were not parties to it. As matters are presented plaintiffs have placed it beyond their power, as stated above, to surrender the property to the lessors, who have been deprived of its possession by the judicial acts of plaintiffs. In *1551 effect the continuance of their proceedings against Rothschild was a demand for the continuance of the lease, otherwise it would have been out of their power to deliver possession to and maintain the same in Rothschild & Co. for the unexpired term. They, in fact, kept possession in order to deliver to Rothschild. This is inconsistent with a demand for a dissolution of the lease. 23 An. 23.
It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and it is now ordered, adjudged and decreed that there be judgment in favor of defendants, dismissing plaintiffs’ suit and dissolving and setting aside the injunction herein, the plaintiffs to pay costs.